UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON

NEIL GORDON FERNANDES,

      Plaintiff,                                Case No. 22-cv-12335

v.                                             HON. MARK A. GOLDSMITH

LOREN K. MILLER, et al.,

      Defendants.
_____/

**OPINION & ORDER (1) GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (Dkt. 8) AND (2) DENYING MOTION FOR PRELIMINARY INJUNCTION (Dkt. 10)**

Plaintiff Neil Gordon Fernandes filed suit to challenge, under the Administrative Procedure Act (APA), Defendant U.S. Citizenship and Immigration Services's (USCIS) denial of his Form I-485 Application to Register Permanent Residence or Adjust Status (application for adjustment of status). Compl. ¶¶ 1, 16 (Dkt. 1). USCIS denied Fernandes's application for adjustment of status on the ground that Fernandes was not eligible for adjustment of status under 8 U.S.C. § 1255 because he engaged in unauthorized employment for an aggregate period exceeding 180 days. See id. ¶¶ 13, 39, 88.

Before the Court are Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (Dkt 8) and Fernandes's motion for a preliminary injunction, in which he requests that this Court stay USCIS's denial and the impacts of that denial (Dkt. 10). Because district courts lack jurisdiction to review USCIS denials of

applications for adjustment of status, the Court grants the motion to dismiss and denies the motion for a preliminary injunction.[1]

## I. BACKGROUND

The Court first provides an overview of the statutory framework relevant to Fernandes's claims before recounting the facts specific to Fernandes's case.

**A. Statutory and Regulatory Background**

The Immigration and Nationality Act (INA) allows religious workers to enter and stay in the United States under a nonimmigrant visa (an R-1 visa) for up to five years. 8 U.S.C. §§ 1101(a)(15)(R), 1101(a)(27)(C)(ii); 8 C.F.R. §§ 204.5(m), 214.2(r)(5). A religious organization can seek to employ a temporary R-1 religious worker on a permanent basis through a two-step process. Shalom Pentacostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec., 783 F.3d 156, 159–160 (3d Cir. 2015). First, the organization files a Form I-360 petition for a special immigrant visa. Id. at 160. After that petition is granted, the religious worker may file an application for adjustment of status. Id.

An application for adjustment of status is governed by 8 U.S.C. § 1255(a), which provides:

The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Defendants' motion to dismiss, the briefing for the motion includes Fernandes's response (Dkt. 9), Defendants' reply (Dkt. 12), and Fernandes's sur-reply (Dkt. 14) and corrected sur-reply (Dkt. 15). In addition to Fernandes's motion for preliminary injunction, the briefing includes Defendants' response (Dkt. 16) and Fernandes's reply (Dkt. 19).

8 U.S.C. § 1255(a). Subsection § 1255(c) places limitations on the agency's authority to grant an adjustment of status under subsection (a). It provides that subsection (a) shall not apply to:

> an alien . . . who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States . . . .

8 U.S.C. § 1255(c)(2). This case deals with the part of § 1255(c)(2) referencing unauthorized employment. Mot. to Dismiss at PageID.167.

Section 1255(c)(2) is then modified by 8 U.S.C. § 1255(k), which provides a safe harbor for certain foreign nationals who engaged in fewer than 180 days of unauthorized employment. Despite § 1255(c), an individual may adjust status under 8 U.S.C. § 1255(a) if:

> (1) the alien, on the date of filing an application for adjustment of status, is present in the United States pursuant to a lawful admission;
>
> (2) the alien, subsequent to such lawful admission has not, for an aggregate period exceeding 180 days—
>
>> (A) failed to maintain, continuously, a lawful status;
>>
>> (B) engaged in unauthorized employment; or
>>
>> (C) otherwise violated the terms and conditions of the alien's admission.

8 U.S.C. § 1255(k).

**B. Denial of Fernandes's Application for Adjustment of Status**

It is uncontested that Fernandes engaged in over 180 days of unauthorized work and that USCIS denied Fernandes's application as a result. Resp. to Mot. to Dismiss at PageID.182. Fernandes seeks to have the denial of his application declared unlawful because USCIS was mistaken about his eligibility for adjustment of status—Fernandes interprets the parenthetical phrase "other than through no fault of his own or for technical reasons" in 8 U.S.C. § 1255(c)(2)

3

to apply not only to failures to maintain authorized status, but also to failures to cease or avoid unauthorized employment. Id. at PageID.184. He argues that his period of unauthorized employment was in reliance on counsel's advice, and thus was "through no fault of his own." Compl. ¶¶ 14, 16. He also seeks a finding that a regulation which defines the scope of the "through no fault of his own or for technical reasons" phrase is invalid. Id. ¶ 16. Finally, he seeks a finding that USCIS's denial of his application after its own unreasonable delay in adjudicating the matter constitutes arbitrary and capricious agency action and an abuse of discretion. Id.

## II. ANALYSIS

Defendants argue that this Court lacks subject matter jurisdiction because 8 U.S.C. §1252(a)(2)(B)(i) bars judicial review of a challenge to "any judgment regarding the granting of relief under [section] . . . 1255 . . . ." Mot. to Dismiss at PageID.164 (citing 8 U.S.C. § 1252(a)(2)(B)(i)). For the reasons explained below, Defendants are correct.

**A. Jurisdiction to Review USCIS Denial of Application to Adjust Status**

**i. Jurisdiction-Stripping Provision of 8 U.S.C. § 1252(a)(2)(B)**

The INA limits judicial review of the denial of discretionary relief. 8 U.S.C. § 1252(a)(2)(B). That provision states:

> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> > (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> >
> > (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary

4

      of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added).

Defendants argue that Patel v. Garland, 142 S. Ct. 1614 (2022) supports their argument that 8 U.S.C. 1252(a)(2)(B)(i) bars this Court's review of USCIS's decision regarding Fernandes's application for adjustment of status. Mot. to Dismiss at PageID.173. Patel presented the question of whether § 1252(a)(2)(B)(i) barred judicial review of USCIS's factual determinations related to a foreign national's eligibility for adjustment of status. 142 S. Ct. at 1622-1623. The United States Supreme Court found that it did. Id. at 1623. In reaching this conclusion, the Supreme Court focused on the meaning of "any judgment" in § 1252(a)(2)(B)(i). Id. at 1621–1622. The Supreme Court took an expansive view of that phrase, determining that "any judgment" meant "judgments of whatever kind under § 1255, not just discretionary judgments or the last-in-time judgments." Id. at 1622. While Fernandes argues that § 1252(a)(2)(B)(i) precludes review only of the ultimate grant or denial of an application for adjustment of status, rather than of any underlying eligibility determinations, that argument has been foreclosed by Patel. See Corr. Sur-Reply to Mot. to Dismiss at PageID.226–227.[2]

Fernandes also argues that his case can be distinguished from Patel on the grounds that Fernandes is not currently in removal proceedings, and that 8 U.S.C. § 1252(a)(2)(B)(i) does not apply as a result. Resp. to Mot. to Dismiss at PageID.188. It is true that Patel was decided in the context of the plaintiff's petition to an appellate court after removal proceedings were initiated

---

[2] The cases Fernandes cites to make this argument predate Patel, 142 S. Ct. See Corr. Sur-Reply at PageID.226–227 (citing Mejia Rodriguez v. U.S. Dep't Homeland Sec., 562 F.3d 1137 (11th Cir. 2009); Pinho v. Gonzales, 432 F.3d 193, 203 (3d Cir. 2005)). To the extent these cases support the argument that eligibility determinations, unlike a final grant or denial of relief, are reviewable, they have been superseded by Patel, 142 S. Ct. at 1622.

against him. 142 S. Ct. at 1620. It is also true that the Supreme Court stated that it was not deciding that § 1252(a)(2)(B)(i) precluded all review of USCIS denials of discretionary relief. Id. at 1626.

However, the plain text of the statute appears to mandate that result. The introduction to § 1252(a)(2)(B) states that the subsection applies "regardless of whether the judgment, decision, or action is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B).[3] The United States Court of Appeals for the Sixth Circuit, looking to that introductory language, has held that § 1252(a)(2)(B)(ii) applies outside of removal proceedings. CDI Info. Servs., Inc. v. Reno, 278 F.3d 616, 619 (6th Cir. 2002). There is no reason the Sixth Circuit's conclusion as to § 1252(a)(2)(B)(ii) would not also apply to § 1252(a)(2)(B)(i).

As a result, the fact that Fernandes is not currently in removal proceedings does not meaningfully distinguish this case from Patel. Section 1252(a)(2)(B)(i) strips this Court of subject matter jurisdiction to review USCIS's denial of Fernandes's application for adjustment of status.

---

[3] See Doe v. Mayorkas, No. 22-cv-752, 2022 WL 4450272, at *3–4 (D. Minn. Sept. 23, 2022) (slip copy) (finding that while Patel's "holding was limited to the review of judgments made in removal proceedings," the denial of an I-485 application outside the context of removal proceedings "is firmly within the plain language of the statute"); Atanasovska v. Barr, No. 20-cv-2746, – F. Supp. 3d –, 2022 WL 17039146, at *2 (W.D. Tenn. Nov. 8, 2022) (declining to distinguish plaintiff's case from Patel on the ground that Patel "involved a removal proceeding as opposed to the USCIS's denial of Plaintiff's Application for Adjustment of Status or Motion to Reopen and Reconsider"); Badra v. Jaddou, No. 22-cv-22465, 2022 WL 4376331, at *1–2 (S.D. Fla. Sept. 22, 2022) (slip copy) (finding, in the wake of Patel, that plaintiffs whose applications for adjustment of status were denied and who were not in removal proceedings had no avenue of judicial review available to them); Rabinovych v. Mayorkas, No. 21-cv-11785, – F. Supp. 3d –, 2022 WL 3908951, at *5–6 (D. Mass. Aug. 31, 2022) (holding that, in the wake of Patel, plaintiffs were "preclude[d] . . . from seeking review of USCIS's denial of their adjustment of status applications unless and until they are subjected to final orders of removal"); Morina v. Mayorkas et al., 22-cv-02994, 2023 WL 22617, at *9 (S.D.N.Y. Jan. 3, 2023) (holding that "Patel's holding applies regardless of whether removal proceedings have been commenced").

### ii. Jurisdiction-Restoring Provision of 8 U.S.C. § 1252(a)(2)(D)

Fernandes argues that he is bringing a legal challenge, not a factual challenge, and that even if jurisdiction is stripped by 8 U.S.C. § 1252(a)(2)(B)(i), it is restored by 8 U.S.C. § 1252(a)(2)(D). That provision states:

> (D) Judicial review of certain legal claims
>
> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (emphasis added). Fernandes asserts that "[i]t is well-established that federal courts can review applications of law to undisputed facts under § 1252(a)(2)(D)." Resp. to Mot. to Dismiss at PageID.187 (citing Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1068–1073 (2020)). But Guerrero-Lasprilla held that courts of appeals could review such questions, not district courts. See Guerrero-Lasprilla, 140 S. Ct. at 1068–1073.

Fernandes acknowledges that "Section 1252(a)(2)(D)'s plain language categorically grants courts of appeals jurisdiction over claims involving legal questions arising in petitions filed under § 1252," but he argues that this is not clearly a grant of exclusive jurisdiction. Resp. to Mot. to Dismiss at PageID.190–191. However, Fernandes has not supplied any authority holding that section § 1252(a)(2)(D) applies to restore jurisdiction regarding questions of law to district courts. In fact, this argument has been rejected. See Lee v. U.S. Citizenship and Immigration Servs., 592 F.3d 612, 620 (4th Cir. 2010) (collecting cases holding that § 1252(a)(2)(D) "does not give [plaintiffs] a jurisdictional bootstrap into district court").

Section § 1252(a)(2)(B) strips this Court of jurisdiction to review USCIS's denial of Fernandes's application, and Section § 1252(a)(2)(D) does not restore it.

**B. Jurisdiction to Evaluate Legality of Regulation**

Count II of Fernandes's complaint challenges the validity of an agency regulation—8 C.F.R. § 245.1(d)(2)—and seeks to have it invalidated as unlawful. Resp. to Mot. to Dismiss at PageID.184. That regulation defines the scope of the parenthetical phrase "through no fault of his own or for technical reasons" contained within 8 U.S.C. § 1255(c)(2). Fernandes briefly argues that this Court has jurisdiction to decide the validity of the regulation even if the Court does not have jurisdiction to review USCIS's eligibility determination and decision denying his application for adjustment of status. Id. at PageID.184–185. It is not clear why this would be. Per Patel, we do not have jurisdiction to evaluate any USCIS decision related to the denial of an adjustment of status application, regardless of whether the challenge is legal or factual in nature. 142 S. Ct. at 1622. If the government institutes removal proceedings against Fernandes, a court of appeals will have jurisdiction to "review . . . questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D).

### III. CONCLUSION

For the reasons above, this Court holds that it lacks subject matter jurisdiction to review USCIS's denial of Fernandes's application for adjustment of status. As a result, the motion to dismiss (Dkt. 8) is granted and the motion for a preliminary injunction (Dkt. 10) is denied.

SO ORDERED.

Dated: January 31, 2023　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　United States District Judge